**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**APR 8 2002**

**PATRICK FISHER**
**Clerk**

**PUBLISH**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

ESSENCE, INC., doing business as
The Bare Essence, a Colorado
corporation; DEVONA RICHELLE
LOPEZ and LISA EASTON,

       Plaintiffs-Appellees/
       Cross-Appellants,

v.

THE CITY OF FEDERAL HEIGHTS,

       Defendant-Appellant/
       Cross-Appellee.

Nos. 00-1271 and 00-1286

---

**Appeal from the United States District Court**
**for the District of Colorado**
**(D.C. No. 98-M-71)**

---

Bradley J. Reich, (Arthur M. Schwartz, Michael W. Gross, on the briefs), Arthur
M. Schwartz, P.C., Denver, Colorado, for Plaintiffs-Appellees/Cross-Appellants.

Steven J. Dawes, (Brian S. Popp, with him on the briefs), Griffiths, Tanoue &
Light, Denver, Colorado, for Defendant-Appellant/Cross-Appellee.

---

Before **TACHA**, **ANDERSON**, and **MURPHY**, Circuit Judges.

---

**MURPHY**, Circuit Judge.

## I. INTRODUCTION

During the middle to late 1990s, the defendant, City of Federal Heights, Colorado, enacted a series of ordinances governing the licensing and operation of adult entertainment businesses. Plaintiffs are Essence, Inc., a corporation that operates a nude dancing establishment, and Devona Richelle Lopez and Lisa Easton, two women denied employment as dancers by Essence, Inc. because they were younger than twenty-one at the time they sought employment. Plaintiffs present First Amendment facial challenges to multiple provisions of the Federal Heights municipal code. The district court, with a few exceptions, rejected the challenges and granted Federal Heights' summary judgment motion. This court has jurisdiction under 28 U.S.C. § 1291 and **affirms in part**, **reverses in part**, and **remands**.

## II. BACKGROUND

At least as early as 1994, Federal Heights sought to regulate the location and operation of "adult entertainment establishments."[1] A series of ordinances

---

[1] As used throughout this opinion, the phrase "adult entertainment establishment" shall have the meaning given it by Federal Heights Ordinance 96-12, sec. 1(A) (June 17, 1996), *codified at* Federal Heights Mun. Code ch. XII, art. XII, § 12-12-2(A): "An adult arcade, adult bookstore, adult video store, adult cabaret, adult motel, adult motion picture theater, adult theater, sexual encounter establishment, all as defined herein, or other similar businesses . . . ." Relevant to

followed throughout the 1990s. The result was a comprehensive licensing and regulatory scheme governing adult entertainment establishments codified in Federal Heights Municipal Code chapter XII, article XII. It requires those seeking to do business as adult entertainment establishments to apply for a license from the City of Federal Heights. *See* Federal Heights Mun. Code ch. XII, art. XII, §§ 12-12-4 to -6. The code was amended in 1997 to require employees and managers of adult entertainment establishments to obtain licenses before they would be allowed to work. *See* Federal Heights Ordinance 97-15, § 6, *codified at* Federal Heights Mun. Code ch. XII, art. XII, § 12-12-10.[2]

Plaintiff Essence[3] applied for a business license in November 1996. It was informed by the Federal Heights City Administrator, Roger Tinklenberg, that it had met "all the preliminary requirements for issuance" of a license, but that a license would not issue until permits from the Building and Fire Departments

---

this case is the definition of "adult cabaret": "A nightclub, bar, restaurant or similar business which regularly features . . . Persons who appear in a state of nudity . . . ." Federal Heights Mun. Code ch. XII, art. XII, § 12-12-2(A)(3).

[2] In this opinion, licenses issued under section 12-12-6 to businesses will be called "business licenses." Licenses issued under section 12-12-10 to employees or managers will be called "employee licenses."

[3] Essence, Inc. was called Sanclub Corporation throughout the proceedings before the district court. Some time prior to this appeal its name changed. At all times it did business in Federal Heights as "The Bare Essence." This opinion will refer to the plaintiff corporation as "Essence" and its establishment as "Bare Essence."

were issued for remodeling of Bare Essence. It is not clear whether Federal Heights ever issued the license. Following the death of the registered agent of Essence, Federal Heights required Essence to reapply for a license. Essence applied for another business license on October 28, 1997. Plaintiffs claim that before Federal Heights would issue the license it required substantial remodeling to ensure that dancers would be kept a minimum distance away from patrons and that there was adequate lighting inside and outside the premises. In addition, Federal Heights required Essence to comply with section 12-12-11(B) of the municipal code, which prohibited individuals under 21 from entering nude dancing establishments. As a result, because they were younger than twenty-one, plaintiffs Lopez and Easton were refused employment.[4] Essence was issued a business license on November 4, 1997.

In the meantime, the Federal Heights City Council introduced Ordinance 97-15. The Ordinance amended portions of chapter XII, article XII of the municipal code. Among other provisions, it amended section 12-12-10 to require employees and mangers to obtain licenses from the city before they would be

---

[4] Lopez and Easton have since turned twenty-one, and their claims for injunctive relief are moot. Lopez and Easton, however, also present damage claims which are dependent on their constitutional challenge to the Federal Heights ordinances. They thus retain a concrete interest in the outcome of this matter, rendering their challenge viable and not moot. *See Univ. of Texas v. Camenisch*, 451 U.S. 390, 393-94 (1981).

allowed to work. Ordinance 97-15 was adopted on December 2, 1997, nearly a month after Federal Heights issued a business license to Essence. That same day, the City Council passed Resolution 97-36, which set the application fees for an employee license.

On January 14, 1998, plaintiffs filed a lawsuit challenging the entirety of the Federal Height's adult entertainment regulatory scheme. The plaintiffs mounted a facial attack on numerous provisions of article XII, asking for declaratory and injunctive relief. Essence also claimed that enforcement of the provisions prior to the issuance of its business license caused Essence economic damages. Plaintiffs Lopez and Easton claimed monetary damages stemming from their inability to work as nude dancers at the Bare Essence.

Federal Heights moved for summary judgment, and plaintiffs filed a cross-motion for partial summary judgment. The issues contested were a subset of the claims asserted by plaintiffs. The plaintiffs challenged: (1) the age restriction contained in section 12-12-11(B)[5]; (2) the provision dealing with the denial of business licenses, section 12-12-6[6]; (3) section 12-12-9, which contained the

[5]"[I]t shall be unlawful for any person under twenty-one (21) years of age to be upon the premises of any adult entertainment establishment which offers live nude dancing." Federal Heights Mun. Code ch. XII, art. XII, § 12-12-11(B).

[6] Section 12-12-3 makes it unlawful for a business to engage in business as an adult entertainment establishment without a license. Section 12-12-4 requires applicants for an adult entertainment license to file an application with the City Clerk; the section also specifies what information must be included in the

procedures for suspending or revoking a business license[7]; (4) section 12-12-10,

_____

application.

 Section 12-12-6 sets out the procedure once the application is submitted. After the City Clerk receives the application, the Police Department, the Building Inspector, and the Fire Chief investigate the applicant and its premises "for compliance with the applicable provisions of the municipal code." Those agencies turn the result of their investigations over to the City Administrator. Within 30 days of the Clerk's receipt of the application, the City Administrator must decide to grant a license or, if there is probable cause to believe that there are grounds for denial, notify the applicant and refer the application to the City Council. A hearing before the Council will be held within 20 days of the notice to the applicant. Review of the Council's decision may be pursued according to Colorado law.

 Section 12-12-6 also specifies grounds under which the City Council may deny an application. Among these grounds are a failure by the applicant to provide information reasonably necessary for the issuance of a license, the premise's noncompliance with applicable provisions of the municipal code, or when an applicant, partner, officer, director, or stockholder of more than 10% of the outstanding shares of the applicant business was either convicted of a crime listed in section 12-12-4(F)(1) or had an adult entertainment license denied, suspended, revoked, or non-renewed *and* as a consequence the issuance of a Federal Heights license would result in "serious criminal conduct."

[7] Section 12-12-9 provides the grounds for suspension and revocation of an adult entertainment business license. Under section 12-12-9(A), the City Council shall suspend a license, and may revoke it, if the licensee or its employees have violated any provision of article XII or have knowingly permitted an "unlawful act" upon the licensed premises. Section 12-12-9(B) provides that a license shall be revoked if the license has been suspended within a year, and the licensee or an employee knowingly allowed possession or sale of drugs, prostitution, the licensee operated the business while the license was suspended, or the licensee or employee allowed a sexual act on the premises. Section 12-12-9(E) requires that the City Council hold a public hearing on suspension or revocation within 20 days of notice to the licensee. The decision shall issue within 10 days of the hearing, and the decision may be appealed according to Colorado law.

-6-

the employee licensing provision[8]; (5) the fees imposed on employee license applicants by Resolution 97-36; (6) requirements contained in section 12-12-4 that owners of an adult entertainment business disclose their ownership share in the business; and (7) sections 12-12-13, -14, and -15, which required certain stage configurations, lighting, and a minimum distance between dancers and patrons.

The district court granted defendant's motion in part and plaintiffs' motion in part. On the issue of the age restriction, the court held section 12-12-11(B) invalid as it applied to dancers, but valid as it applied to anyone else. The court recognized that the age restriction was a content neutral regulation and could thus be upheld if it was narrowly tailored to further a substantial governmental interest. It ruled, however, that Federal Heights had "made no showing that restricting the employment of performers to those over 21 has any relationship to the community's interest in avoidance or mitigation of the secondary effects from the operation of adult entertainment establishments." Dist. Ct. Op. at 6-7. As to

---

[8] Section 12-12-10 (as amended by Ordinance 97-15) requires all managers and employees of a licensed establishment to apply for an employee's license. All applications will be investigated by the Police Department; the investigations shall be completed within 14 days. After the investigation, the license shall issue unless the City Administrator finds grounds for denial of the license. There is no specific time limit on the City Administrator's decision. The grounds for denial include making false or misleading statements on the application, failing to provide the information required in section 12-12-10, failing to pay an annual license fee, being convicted of one of the criminal offenses listed in section 12-12-4(F)(1), or having an employee license revoked by Federal Heights or other governmental entity within the 5 years preceding the date of application.

patrons under the age of twenty-one, the court ruled that their First Amendment rights were "qualitative[ly] differen[t]" from the rights of the performers, that dancers' rights to express themselves through nude dancing "did not include a right to perform for a particular audience," and that the age restriction was "only an incidental burden on [Essence's] freedom." *Id.* at 7.

The district court ruled that sections 12-12-6, 12-12-9, and 12-12-10, the provisions dealing with the denial, suspension, and revocation of business and employee licenses, contained all the requisite procedural safeguards. The court ruled that the fourteen day limit on the decision whether to grant an employee license under section 12-12-10 was not so long as to run afoul of the procedural safeguards of *Freedman v. Maryland*, 380 U.S. 51 (1965). *See* Dist. Ct. Op. at 8. The court did not address whether section 12-12-10 was invalid because it did not require the city to go to court to justify a denial of an employee license, nor did it consider whether 12-12-10 was invalid because it did not contain an adequate judicial review procedure. The court ruled that the judicial review following a denial of an application for a business license under section 12-12-6, or following a suspension or revocation of a business license under section 12-12-9, was adequate, even though the judicial review procedure did not guarantee a swift judicial decision. *Id.* at 8-10.

The district court also ruled that sections 12-12-6 and 12-12-9, for the most part, did not grant to the officials of Federal Heights impermissible discretion in deciding whether to grant, suspend, or revoke business licenses. The court accepted the city's narrowing construction of several phrases in the ordinance that otherwise seemed to give the City Administrator and City Council wide discretion to deny, suspend, or revoke a business license. *See id.* at 11. The district court, however, declared invalid the portion of section 12-12-6 allowing the City Council to deny an application for a business license if issuance of the license would result in "serious criminal conduct." *See id.* at 12.

The district court upheld portions of sections 12-12-6 and 12-12-10, which allowed denial of applications for business and employee licenses if a principal (in the case of a business license) or employee has been convicted of certain crimes specified in section 12-12-4(F). The court analyzed the disqualification provisions as content neutral restrictions on speech and concluded that they furthered the substantial governmental interest in mitigating the secondary effects of adult businesses. *Id.* at 13-15.

The district court upheld the licensing fees imposed on applicants for employee licenses, observing that the fees were correlated to the costs of administering the licensing scheme. *Id.* at 16-17. Since plaintiffs did not prove the fees were excessive, the court declared them valid. *Id.* at 17. The district

court also ruled on other provisions of the Municipal Code, including the requirements that principals of businesses seeking business licenses disclose their share of the business, that dancers maintain a certain distance from the stage, and that adequate lighting be installed both inside and outside the premises. The court declared invalid the portion of the Code requiring principals to disclose their exact share of an applicant for a business license, but upheld the premises configuration requirements. These rulings were not appealed.

## III. STANDING

Before reaching the merits of the appeal, this court must satisfy itself that the parties have standing to invoke the power of the federal courts. *Steel Co. v. Citizens for a Better Env't,* 523 U.S. 83, 94 (1998). Neither the parties nor the district court addressed the question of plaintiffs' standing. Nevertheless, it is the responsibility of this court to raise the issue on its own to ensure that it has and the district court had before it an Article III case or controversy. *See Bender v. Williamsport Area Sch. Dist.,* 475 U.S. 534, 541 (1986). There are three requirements of Article III standing. First, the plaintiff must suffer an injury in fact. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992). An injury in fact is an "invasion of a legally protected interest" that is (a) concrete and particularized and (b) actual or imminent, i.e., not conjectural or hypothetical. *Id.* (quotations omitted). Second, the injury must be "fairly trace[able] to the

challenged action of the defendant," rather than some third party not before the court. *Id.* (quotation omitted). Third, it must be likely that a favorable court decision will redress the injury of the plaintiff. *Id.* at 561. The burden to establish standing rests on the party invoking federal jurisdiction, and the evidence needed to carry that burden depends on the stage of litigation. *Id.*; *Loving v. Boren*, 133 F.3d 771, 772 (10th Cir. 1998). When the procedural posture of the case is a Federal Rule of Civil Procedure 56 motion for summary judgment and plaintiffs' standing is at issue, to prevail on such a motion "a plaintiff must establish that there exists no genuine issue of material fact as to justiciability," and "mere allegations" of injury, causation, and redressability are insufficient. *Dept. of Commerce v. United States House of Representatives*, 525 U.S. 316, 329 (1999).

We conclude that plaintiffs do not have Article III standing to challenge the portion of section 12-12-6 allowing the City of Federal Heights to deny a business license based on the previous criminal convictions of a principal or the portion of section 12-12-10 allowing the city to deny an employee license based on a previous criminal conviction of the applicant. Plaintiffs have neither demonstrated that no genuine issue of fact exists as to injury in fact, nor alleged facts necessary to show injury-in-fact. *See FW/PBS, Inc. v. City of Dallas*, 493 U.S. 215, 231 (1990) ("[P]etitioners . . . must allege . . . facts essential to show

-11-

jurisdiction. If [they] fai[l] to make the necessary allegations, [they have] no standing." (quotation omitted)).

Injury-in-fact must be concrete and imminent. Hypothetical or conjectural harm is not sufficient. When a law does not apply to a party, that party has suffered no invasion of a legally protected interest and may not question the law's constitutionality. *See Warth v. Seldin,* 422 U.S. 490, 504 (1975) (holding plaintiffs challenging zoning ordinance lacked standing because, among other reasons, "none is himself subject to the ordinance's strictures"). The portions of sections 12-12-6 and 12-12-10 that provide grounds for denial of licenses based on previous criminal convictions are remarkably similar to a provision challenged in *FW/PBS*. A "civil disability provision" prohibited the City of Dallas from issuing an adult entertainment license to an individual who had been convicted of one or more enumerated crimes. *FW/PBS*, 493 U.S. at 232. The Supreme Court held that no party before it had standing to challenge the disability provision because none could show that they had been convicted of a crime disabling them from receiving a license. *Id.* at 233-34; *see also East Brook Books, Inc. v. City of Memphis*, 48 F.3d 220, 227 (6th Cir. 1995) (same).

Similarly, 12-12-6 and 12-12-10's disability provisions do not apply to Essence or the individual plaintiffs. There is no allegation that Essence is owned or controlled by any individuals subject to the disability provision or that Essence

-12-

has ever been owned by such individuals. Additionally, plaintiffs have not alleged that Essence employs such individuals or has had to deny employment to those convicted of crimes, nor is there an allegation that the individual plaintiffs have been convicted of crimes. Merely because Essence is prospectively inhibited from such ownership and employment arrangements is, in this case, a hypothetical injury and not a concrete injury. As a consequence, the plaintiffs do not have standing, and the district court should have dismissed their challenge to the disability portions of section 12-12-6 and 12-12-10.

Essence has not alleged facts demonstrating injury-in-fact to support its challenge to the other portions of section 12-12-6. Section 12-12-6 allows the denial of an application for a business license on one of several grounds. Once an application is denied, the applicant may appeal the decision to the Colorado state courts pursuant to Colorado Rule of Civil Procedure 106(a)(4). Plaintiffs contend that the grounds for denial vest too much discretion in the licensing authority and that the judicial review procedure is inadequate. Essence, of course, has already been granted a license, and the allegedly overbroad discretion and lack of judicial review attendant to the application process do not apply to Essence. *See Clark v. City of Lakewood*, 259 F.3d 996, 1008 (9th Cir. 2001) (finding no injury in fact when cabaret owner who had license challenged licensing requirement); *DLS, Inc. v. City of Chattanooga*, 107 F.3d 403, 413 (6th Cir. 1997) (same). While section

-13-

12-12-5(C) requires a new application if there is any change in ownership of an adult entertainment establishment, Essence has not alleged that it will change ownership or is likely to do so. It is thus pure conjecture to say that Essence will again have to apply for a business license.

Essence has also failed to allege facts demonstrating that it has standing to challenge section 12-12-9. It asserts that section 12-12-9 gives too much discretion to the city to revoke or suspend a business license. Essence also asserts section 12-12-9 fails to provide a stay of a suspension or revocation pending judicial review and fails to guarantee timely judicial review of the city's suspension and revocation decisions. Essence currently holds a business license. Thus, there is the *possibility* that the city will suspend or revoke the license through exercise of its allegedly overbroad discretion, unchecked by adequate procedural safeguards. An Article III injury, however, must be more than a possibility. *See Whitmore v. Arkansas*, 495 U.S. 149, 158 (1990) ("Allegations of *possible* future injury do not satisfy the requirements of Art. III." (emphasis added)). Essence must show that it "has sustained or is *immediately in danger of sustaining some direct injury*." *City of Los Angeles v. Lyon*, 461 U.S. 95, 101-02 (1983) (emphasis added). The "threat of injury must be both real and immediate." *Id.* at 102 (quotation omitted). Of course, Essence need not "await the consummation of threatened injury," but the injury must be "certainly

-14-

impending." *Babbitt v. United Farm Workers Nat'l Union*, 442 U.S. 289, 298 (1979) (quotation omitted). Essence has not alleged that Federal Heights has sought to suspend or revoke its business license or has threatened to do so. Nor has it alleged any fact indicating that suspension or revocation may be imminent or that it has altered its behavior as a result of the provision. It has thus not carried its burden of demonstrating standing.[9]

---

[9] There are cases that hold a possibility of license suspension or revocation confers standing. In *Deja Vu of Nashville, Inc. v. Metropolitan Government*, the Sixth Circuit held that the possibility that a licensor will suspend or revoke a license without adequate procedural safeguards constitutes a threat to the licenseholders' First Amendment interests and is itself a legally cognizable injury. *See* 274 F.3d 377, 399 (6th Cir. 2001). In *Deja Vu*, as in this case, the plaintiffs did not allege that the licensor threatened to suspend or revoke their business license. *Id.* In holding that the plaintiffs had standing to challenge the municipal ordinance's alleged lack of adequate judicial review procedures, the Sixth Circuit relied on Supreme Court precedent establishing that a license *applicant* need not apply for and be denied a license before challenging a licensing requirement. *Id.* (quoting *Freedman v. Maryland*, 380 U.S. 51, 57 (1965)).

The analogy between an applicant and a licenseholder is not persuasive. The applicant has standing to bring a facial challenge to a licensing scheme vesting unbridled discretion in the licensor because of the likelihood of self-censorship: the applicant may be cowed into censoring its speech for fear of alienating the licensor and receiving an unfavorable decision on its application. *City of Lakewood v. Plain Dealer Publ'g Co.*, 486 U.S. 750, 757 (1988). After the license has already been granted, however, circumstances change. First, self-censorship is spurred by apprehension of viewpoint hostility. *See id.* at 757-58. The approval of the license eliminates some concern that the licensor harbors covert hostility to the content of the licenseholder's speech. Second, self-censorship may be presumed in the application context because the licensor has the leverage of the pending application decision. After the license has been granted, however, the licensor lacks this ready means for influencing the licenseholder. We recognize that a threat of suspension or revocation would be one method of coercing the licenseholder to self-censor, and, as we have

-15-

On remand, the district court should vacate the portion of its opinion and order upholding the disqualification provisions of sections 12-12-6 and 12-12-10, the portion of its opinion and order relating to plaintiffs' other challenges to section 12-12-6, and the portion of its opinion and order relating to plaintiffs' challenges to section 12-12-9. The district court should then dismiss the portions of plaintiffs' complaint challenging those provisions.

## IV. STANDARD OF REVIEW

This court reviews a summary judgement *de novo* and applies the same legal standard used by the district court under Rule 56. *Sigmon v. CommunityCare HMO, Inc.*, 234 F.3d 1121, 1124 (10th Cir. 2000). When determining whether there exist issues of material fact and whether the movant is entitled to a judgment as a matter of law, a court looks at the record and the reasonable inferences from the record in the light most favorable to the non-movant. *Kaul v. Stephan*, 83 F.3d 1208, 1212 (10th Cir. 1996). Our review of the record is more rigorous in a First Amendment context. *Revo v. Disciplinary Bd. of the Supreme Court*, 106 F.3d 929, 932 (10th Cir. 1997). Accordingly, this

---

recognized, such a threat would provide standing. The precedent relied upon by the *Deja Vu* court also recognized standing when a licenseholder was actually threatened with revocation. *See G & V Lounge, Inc. v. Mich. Liquor Control Comm'n*, 23 F.3d 1071, 1074 (6th Cir. 1994); *see also Deja Vu*, 274 F.3d at 404 (Wellford, J., concurring in part and dissenting in part). Without some indication that Essence may lose its license to speak or is being pressured into not speaking, it cannot demonstrate injury.

court is "obligated to make an independent examination of the record in its entirety." *Z.J. Gifts D-2, L.L.C. v. City of Aurora*, 136 F.3d 683, 685 (10th Cir. 1998).

## V. AGE RESTRICTION

Both parties contest the district court's handling of plaintiffs' challenge to section 12-12-11(B), the section prohibiting anyone under the age of twenty-one from being on the premises of a business offering live nude dancing. The district court ruled that section 12-12-11(B) was valid as applied to patrons of nude dancing establishments, but invalid as applied to dancers.

Nude dancing is expressive conduct protected by the First Amendment. *Schad v. Borough of Mount Ephraim*, 452 U.S. 61, 66 (1981). Such dancing is not "core" First Amendment speech, but rather "falls only within the outer ambit" of free speech protection. *City of Erie v. Pap's A.M.*, 529 U.S. 277, 289 (2000) (plurality opinion). As with any symbolic speech mixing elements of speech and conduct, the first question to be answered is whether section 12-12-11(B) is content based or content neutral. *Texas v. Johnson*, 491 U.S. 397, 407 (1989). Content based regulations are subject to strict scrutiny, while content neutral regulations need only satisfy the more relaxed scrutiny specified in *United States v. O'Brien*, 391 U.S. 367, 377 (1968). *Id.* Because we conclude, however, that

section 12-12-11(B) does not survive intermediate scrutiny under *O'Brien*, we need not decide whether it is content neutral or content based.

The *O'Brien* test has four factors. First, this court must assess whether Federal Heights possesses the constitutional power to enact the ordinance. Second, the regulation must further an important or substantial government interest. Third, the government interest must be unrelated to the suppression of free expression. Fourth, the restriction must be no greater than is essential to the furtherance of the government interest. *See O'Brien*, 391 U.S. at 377. It is the burden of Federal Heights to prove satisfaction of each of these elements. *See United States v. Playboy Entm't Group, Inc.*, 529 U.S. 803, 816 (2000) ("When the Government restricts speech, the Government bears the burden of proving the constitutionality of its actions."); *Z.J. Gifts,* 136 F.3d at 688. The city has not met its burden with respect to the second *O'Brien* requirement. We do not address the other factors.

**A.     The City's Interest in Limiting the Harmful Secondary Effects Associated with Nude Dancing.**

The city asserts it has an interest in combating the harmful secondary effects flowing from nude dancing, including a decrease in property values, an

increase in crime, and sexually transmitted diseases.[10] The city's interest is undeniably important. *Pap's A.M.*, 529 U.S. at 296 (plurality opinion). The city must demonstrate, however, that the harms it seeks to circumscribe are real. *See Turner Broad. Sys., Inc. v. FCC,* 512 U.S. 622, 664 (1994). The city has presented undisputed evidence establishing the existence of harmful secondary effects of nude dancing establishments and, accordingly, that it has a substantial or important interest in limiting those effects.

A municipality only has a substantial or important governmental interest in combating the harmful secondary effects of nude dancing if those secondary effects are real. *Phillips v. Borough of Keyport*, 107 F.3d 164, 175 (3d Cir. 1997) (en banc).[11] The Supreme Court held in *Renton* that a city enacting an ordinance

---

[10] Federal Heights seems to argue in portions of its brief that it passed the age restriction because it determined that individuals aged eighteen to twenty are at a greater risk than the general population from the secondary effects of nude dancing establishments. Federal Heights has not, however, demonstrated that its interest in protecting those younger than twenty-one is substantial. Federal Heights must demonstrate that the harms it seeks to redress actually exist. *See Turner Broad. Sys., Inc. v. FCC,* 512 U.S. 622, 664 (1994). Federal Heights offered evidence that general harmful secondary effects do indeed flow from adult entertainment establishments. *See infra*. The city did not, however, present any evidence that those younger than twenty-one are any more susceptible to those harmful effects. Indeed, there is no indication in the record that those aged eighteen to twenty are even affected by the harmful secondary effects of nude dancing. Without presenting such evidence, the city cannot establish that its interest in protecting those younger than twenty-one is substantial.

[11] There is some support for the position that since the Supreme Court has repeatedly accepted evidentiary showings that secondary effects do in fact result from the presence of adult entertainment establishments, a city may presume their

aimed at secondary effects can rely on evidence "reasonably believed to be relevant to the problem the city addresses." 475 U.S. at 51-52. The city need not "conduct new studies or produce" independent evidence of the secondary effects, but may rely on the experience of other cities. *Id.* at 51. In order to prove a substantial interest in limiting the secondary effects of sexually oriented businesses, the governmental body must point to evidence of secondary effects at the time of enactment or evidence of current secondary effects. *See Barnes v. Glen Theatre, Inc.*, 501 U.S. 560, 582 (1991) (Souter, J., concurring in the judgment) ("Our appropriate focus is not an empirical enquiry into the actual intent of the enacting legislature, but rather the existence or not of a *current governmental interest* . . . ." (emphasis added)).[12] Thus, evidence of secondary

reality. *See City of Eerie v. Pap's A.M.*, 529 U.S. 277, 297 (2000) (plurality opinion); *see also FW/PBS, Inc. v. City of Dallas*, 493 U.S. 215, 244 (1990) (opinion of White, J.) ("*Renton* and *Young* also make clear that there *is* a substantial governmental interest in regulating sexually oriented businesses because of their likely deleterious effect on the areas surrounding them . . . .") (emphasis added). *But see Pap's A.M.*, 529 U.S. at 313 (opinion of Souter, J.) (requiring "a regulating government to make some demonstration of an evidentiary basis for the harm it claims to flow from the expressive activity"). Because this court holds that Federal Heights has actually demonstrated that the secondary effects of nude dancing are real, we need not consider whether it may presume their reality.

[12] Numerous courts have concluded that Justice Souter's opinion should be read as the holding of the *Barnes* court. *See Tunick v. Safir,* 209 F.3d 67, 83 (2d Cir. 2000) (separate opinion of Calabresi, J.) (noting that Fifth, Sixth, Seventh, Eighth, and Eleventh Circuits have read Justice Souter's opinion as the holding of *Barnes*).

effects occurring even years after the enactment of a statute may form the basis of a government's substantial interest in limiting those secondary effects. *See DLS, Inc. v. City of Chattanooga*, 107 F.3d 403, 410-11 (6th Cir. 1997) (rejecting the argument that evidence of secondary effects developed after enactment of adult entertainment regulation is irrelevant); *see also J & B Entm't, Inc. v. City of Jackson*, 152 F.3d 362, 371-72 (5th Cir. 1998).

Other courts have required a substantial evidentiary showing of secondary effects before a city's interest in combating them will be deemed substantial or important. The Fifth Circuit requires a showing based on "testimony of individuals, local studies, or the experiences of other cities." *SDJ, Inc. v. City of Houston*, 837 F.2d 1268, 1274 (5th Cir. 1988). Merely stating the words "secondary effects" in a preamble is insufficient. *J & B Entm't*, 152 F.3d at 373-74. The Third Circuit requires the regulating governmental body to identify the secondary effects "with some particularity" and put forth "some record support for the existence of those effects." *Phillips*, 107 F.3d at 175.

This circuit has declared that a city's stated purpose to limit the impact of secondary effects must be credited and "accorded high respect." *Z.J. Gifts*, 136 F.3d at 688 (quotation omitted). A city "may control a perceived risk" of secondary effects through regulation and need not wait until the secondary effects actually exist. *Id.*

Federal Heights' evidentiary showing is substantial. The preamble to Ordinance 94-16, which enacted the predecessor of section 12-12-11(B), recited several harmful secondary effects that the city found were caused by "adult entertainment establishments." There is no preamble to Ordinance 95-11, which enacted section 12-12-11(B), but section 12 of the ordinance provided that the ordinance "is deemed necessary for the protection of the health, welfare, and safety of the community." Ordinance 96-15 amended the zoning laws of Federal Heights to prohibit adult entertainment establishments from locating within 500 feet of a church, school, other adult entertainment establishment, or a residential zone. The preamble recites that the city consulted land use studies from other cities demonstrating adverse secondary impacts from adult businesses, but the cities, the authors, and details of the studies are not included.

Ordinance 97-15 amended other provisions of the adult business regulations and created, among other things, an employee licensing scheme. The preamble to 97-15 cites *Renton* for the proposition that it may rely on the experience of other cities with harmful secondary effects from adult businesses and need not "await the impact of such effects." The preamble also states that the City Council and administrators have reviewed many land use studies concerning secondary effects. The location and dates of fourteen studies are listed, but no details are given. From these studies, the City Council concluded that secondary effects result from

adult businesses. These effects include increased rates of certain crimes, the spread of sexually transmitted diseases, and harmful effects on surrounding residences and businesses including decreased property values and parking and traffic problems.

The affidavit of Sharon Richardson, Mayor Pro Tem of Federal Heights, states that "residents shared concerns with me about the nature of the effects of Adult Entertainment Establishments on the community." Section 12-12-11(b) was supported by "studies and information received subsequent to the 1995 ordinance." The City Council's deliberations on Zoning Ordinance 96-15, she testifies, took into account "secondary impact studies both locally and nationally." Crime statistics relating to adult businesses were presented to the Council, as was an informal survey of other Colorado communities regarding their experiences with the secondary effects of adult businesses. Ms. Richardson also testified that Federal Heights had a topless dancer club from 1975 to 1979 and that there were "numerous problems . . . including one murder on the premises."

In this case, Federal Heights has offered undisputed evidence that secondary effects have resulted and will result from nude dancing clubs and other forms of adult entertainment. As noted above, there are numerous statements in the preambles of various Federal Heights ordinances that the presence of adult entertainment establishments would result in harmful secondary effects. These

preambles are not "mere incantations" of secondary effects. *See J & B Entm't,* 152 F.3d at 373-74. Rather, they are a detailed list of the harmful effects the City Council expected to flow from adult entertainment establishments. Detailed as they are, and, given the testimony of Mayor Pro Tem Richardson, supported by studies and information received by the Council, these preambles are strong evidence of secondary effects. *See id.* at 374 (preamble statements properly explained are evidence of substantial governmental interest in limiting secondary effects). Additionally, the City Council was in close communication with its constituents who made clear that there were concerns about the effect of adult establishments on the community. The subsequent pronouncements of the City Council that it felt the need to deal with the imminent secondary effects of adult establishments should be interpreted as experienced, "particularized, expert judgments" entitled to significant weight. *See Pap's A.M.*, 529 U.S. at 297-98 (plurality opinion). Moreover, Federal Heights consulted several studies from other jurisdictions and relied on court decisions detailing the secondary effects flowing from such establishments. Ms. Richardson's affidavit also reveals that Federal Heights and the City Council had some experience with a topless dancing club and its attendant problems. *See DLS, Inc.*, 107 F.3d at 410 (noting that city's experience with crime-ridden adult cabaret fifteen years before enactment of adult

-24-

entertainment ordinance was evidence that secondary effects result from adult cabarets).

When there is evidence of secondary effects in the form of supported preamble statements, studies and court decisions relied upon by the governing body, and localized experience with crime or other secondary effects associated with nude dancing, the city is entitled to summary judgment on the existence of a substantial governmental interest unless the challenger presents conflicting evidence giving rise to an issue of fact. *See Jones v. Denver Post Corp.*, 203 F.3d 748, 751 (10th Cir. 2000) (party opposing summary judgment motion must "identify sufficient evidence which would require submission of the case to the jury" (quotations omitted)). Plaintiffs have not referenced any evidence casting doubt on the existence of secondary effects. Accordingly, Federal Heights has demonstrated as a matter of law that it has a substantial interest in combating the secondary effects associated with nude dancing.

**B. Requirement that the Age Restriction Furthers the City's Interest.**

The *O'Brien* test is not satisfied, however, merely by the existence of a substantial governmental interest in regulating secondary effects. The city must also prove that its chosen weapon against these secondary effects will further its mission. The city has chosen to combat the general secondary effects associated with nude dancing not by banning nude dancing outright, but by banning those

-25-

under twenty-one from nude dancing establishments. The district court ruled that Federal Heights failed to present evidence that its age restriction on dancers would further its interest in combating secondary effects. Dist. Ct. Op. at 6-7. It therefore denied Federal Heights motion for summary judgment in part and granted plaintiffs' in part.[13]

---

[13] The district court upheld the age restriction as it applied to patrons, because it believed there is a "qualitative difference" between the rights of dancers and observers. We do not decide whether those who receive protected expression have a lesser right than those who send such expression. We note that observers or recipients of expression do have some First Amendment rights. *See U.S. West, Inc. v. FCC*, 182 F.3d 1224, 1232 (10th Cir. 1999) ("Effective speech has two components: a speaker and an audience. A restriction on either of these components is a restriction on speech."); *see also Kleindienst v. Mandel*, 408 U.S. 753, 762 (1972) ("It is now well established that the Constitution protects the right to receive information and ideas." (quotations omitted)).

Moreover, Essence may assert those rights. Although federal courts generally have prevented parties from asserting the rights of others, the traditional rule prohibiting the assertion of the rights of others is prudential rather than jurisdictional in the Article III sense. *See United Food & Commercial Workers Union v. Brown Group*, 517 U.S. 544, 557 (1996). Because this case presents a facial challenge on First Amendment grounds, the prudential standing rules are relaxed. *See Virginia v. American Booksellers Assoc.*, 484 U.S. 383, 392-93 (1988). A well-established exception to the bar against third-party standing is when the exercise of rights by the third party is intertwined with the litigant's activities. As the Supreme Court explained:

> [w]hen . . . enforcement of a restriction against the litigant prevents a third party from entering into a relationship with the litigant (typically a contractual relationship), to which relationship the third party has legal entitlement (typically a constitutional entitlement), third-party standing has been held to exist.

*United States Dept. of Labor v. Triplett,* 494 U.S. 715, 720 (1990); *see also Craig v. Boren*, 429 U.S. 190, 195 (1976) (allowing beer vendor to assert the rights of

A ban on nude dancing would necessarily further the city's interest in minimizing secondary effects. *Pap's A.M.*, 529 U.S. at 300-01 (plurality opinion); *Barnes*, 501 U.S. at 584 (Souter, J., concurring in the judgment). Federal Heights' more limited ban on the presence of those under twenty-one complicates the analysis. Compliance with the ordinance does not require further clothing of the dancers. Federal Heights must thus establish that banning persons under twenty-one while maintaining nude dancing would combat the secondary effects associated with nude dancing.

The city attempted to demonstrate that the age restriction furthers its interest in combating secondary effects by offering the affidavit of Mayor Pro Tem Richardson and the affidavit of Jennifer Weaver, a former dancer at Bare Essence. The city did not offer the Weaver affidavit until the day of oral argument on the cross-motions for summary judgment, almost six months after it

---

males under twenty-one in an equal protection challenge to an Oklahoma liquor law and observing that vendors have been "uniformly permitted" to challenge restrictions "by acting as advocates of the rights of third parties who seek access to their market or function"). The right of eighteen to twenty year-olds to watch nude dancing depends upon whether nude dancing establishments, such as the Bare Essence, are allowed to show nude dancing. In such a case, a restriction on a nude dancing establishment can result in an indirect violation of the rights of audiencemembers.

Because patrons of nude dancing establishments do have some First Amendment interest in observing nude dancing, and because Essence may assert that interest, the district court erred in bifurcating its analysis Instead, it should have evaluated the age restriction as a whole under *O'Brien.*

filed its summary judgment motion. Weaver was a dancer at the Bare Essence and testified to observing numerous illegal activities and conduct at the club violating the Federal Heights ordinance. Specifically, Weaver testified to seeing dancers under the age of twenty-one drinking alcohol, being told in an employee meeting that it was acceptable for dancers to drink alcohol, and observing customers bring alcohol into the club for employees. Weaver's affidavit tends to prove that underage drinking occurs at nude dancing establishments and that the age restriction would be effective in reducing the crime of underage drinking.

The district court denied Federal Heights' motion to supplement its reply brief with the affidavit. Our review of that decision, like review of other evidentiary rulings, is for abuse of discretion. *See Sports Racing Servs., Inc. v. Sports Car Club of Am., Inc.*, 131 F.3d 874, 894 (10th Cir. 1997) ("[W]e review a district court's decision to exclude evidence at the summary judgment stage for abuse of discretion."). Plaintiffs objected to the affidavit as untimely and irrelevant. The transcript indicates that the district court initially thought the affidavit probative only as to the standing of plaintiffs and, hence, irrelevant to consideration of the cross-motions. The court, however, subsequently recognized that the city offered the affidavit to establish the city's need for the age restriction. Thus, the only ground upon which the district court could have denied the motion was timeliness.

-28-

A district court may, in its discretion, consider an untimely affidavit for "cause shown" if the failure to timely file the affidavit "was the result of excusable neglect." Fed. R. Civ. P. 6(b)(2).[14]  Federal Heights contends that the district court abused its discretion by concluding there was no evidence that the age restriction would further the city's interest in preventing secondary effects "and yet the Court did not consider or allow the presentation of evidence which directly addressed the adverse secondary effects."  The city's position is essentially that an abuse of discretion arises whenever a district court refuses to consider evidence necessary to one party's case.  This court, however, will not overturn the district court's evidentiary decision unless we are firmly convinced that it made a clear error of judgment.  *United States v. Magleby*, 241 F.3d 1306, 1315 (10th Cir. 2001).  The district court's exclusion of the late affidavit was not such an error.  *Cf. United States v. Diaz*, 189 F.3d 1239, 1247 (10th Cir. 1999) (holding district court has wide discretion to exclude expert testimony for which notice is untimely); *see also United States v. Adams*, 271 F.3d 1236, 1244 (10th

---

[14] Rule 6(d) requires that affidavits supporting a motion be served with the motion.  Fed. R. Civ. P. 6(d).  Rule 6(b)(2) allows a district court, in its discretion, to admit an untimely filing upon motion if the failure to timely act was the result of excusable neglect.  Fed. R. Civ. P. 6(b)(2).  Rule 6(b) applies to motions for summary judgment.  *See id.* (excluding various motions from Rule 6(b)'s time extension procedures but not listing summary judgment motions); *Buchanan v. Sherrill*, 51 F.3d 227, 228 (10th Cir. 1995) (per curiam) (reviewing a district court's decision to extend time to file summary judgment response under Rule 6(b)(1)).

Cir. 2001) (holding district court justifiably excluded psychologist testimony on timeliness grounds alone).

The only other materials offered by Federal Heights was Mayor Pro Tem Richardson's affidavit. Richardson testified that the City Council determined that "the minimum age requirement of Code § 12-12-11 would assist Federal Heights in reducing the negative effects of sexually oriented businesses." Richardson also testified that the City Council determined again in 1995 that the age restriction on nude dancing would reduce secondary effects. She further testified that the Council's determination is "supported by the studies and information received" after passage of the restriction. The studies referenced by the affidavit are not in the record.

Federal Heights bears the burden at trial of proving that the age restriction furthers its interest in preventing the secondary effects of nude dancing even though nude dancing may still occur. To successfully resist plaintiffs' motion for summary judgment, Federal Heights, as the non-movant who bears the burden of proof at trial, may not rest on its pleadings but must come forth with specific facts showing there is a genuine issue for trial. Fed. R. Civ. P. 56(e); *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986). Richardson's affidavit does not demonstrate that there is a genuine issue for trial on whether the age restriction furthers the city's interest. Mayor Pro Tem Richardson merely opines in a conclusory fashion

that the age restriction furthers the city's interest. The affidavit does not provide a factual basis for Richardson's conclusion. This court has held that such an affidavit does not create a genuine issue of material fact. *Murray v. City of Sapulpa,* 45 F.3d 1417, 1422 (10th Cir. 1995) (conclusory affidavits not providing factual bases for their conclusions not sufficient to create fact question); *Hall v. Bellmon*, 935 F.2d 1106, 1111 (10th Cir. 1991) (conclusory, self-serving affidavit does not create fact question). Thus, plaintiffs' summary judgment motion should have been granted,[15] and section 12-12-11(B) should be stricken.

## VI. LICENSING PROVISIONS

In addition to restricting the age of those on the premises, Federal Heights' sexually-oriented business ordinances establish a licensing scheme for such businesses and their employees. In particular, section 12-12-10 requires all employees and managers of adult entertainment establishments to apply for an

---

[15] Accordingly, Federal Heights' summary judgment motion should have been denied as to the age restriction. Because the Richardson affidavit does not create a genuine issue of fact, it is not evidence upon which a reasonable jury could return a verdict for Federal Heights. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). It was the only evidence offered by Federal Heights, and accepted by the district court, to show that the age restriction furthered its interest in preventing secondary effects. Thus, there was no evidence that would support a jury verdict for Federal Heights. The city, which had the burden of proof at trial, was therefore not entitled to summary judgment. *See Jeffries v. Kansas*, 147 F.3d 1220, 1228 (10th Cir. 1998) (noting that summary judgment proper when "evidence is so one-sided that one party must prevail as a matter of law" (quotation omitted)).

"employee's license."[16] The Supreme Court has allowed licensing of adult entertainment establishments so long as two classic evils of prior restraints are not present. *FW/PBS*, 493 U.S. at 225-26. First, the licensing scheme may not vest unbridled discretion in the government officials charged with the responsibility of granting or denying the license. *Id.* Second, the licensing scheme may not allow the decisionmaker unlimited time to decide on matters affecting the license; otherwise, there is the "risk of indefinitely suppressing speech." *Id.* at 226. To ensure that the decision time is limited, certain procedural safeguards are required. *See id.* at 227; *Freedman*, 380 U.S. at 58-60.

In the adult business licensing context, at least two procedural safeguards are essential: (1) the licensor must make the decision whether to issue the license within a specified and reasonable time period, (2) there must be opportunity for prompt judicial review of the denial of a license. *See FW/PBS*, 493 U.S. at 228;

---

[16] It appears from the record that neither the plaintiff dancers nor any of Essence's employees applied for or were denied an employee license. Nevertheless, plaintiffs have standing to bring a facial challenge to section 12-12-10. "Applying for and being denied a license . . . is not a condition precedent to bringing a facial challenge to an unconstitutional law." *Assoc. of Cmty. Orgs. for Reform Now v. Municipality of Golden*, 744 F.2d 739, 744 (10th Cir. 1984); *see also City of Lakewood v. Plain Dealer Publ'g Co.*, 486 U.S. 750, 755-56 (1988) ("[O]ur cases have long held that when a licensing statute allegedly vests unbridled discretion in a government official . . ., one who is subject to the law may challenge it facially without the necessity of first applying for, and being denied, a license."); *Freedman v. Maryland*, 380 U.S. 51, 55-56 (1965) (plaintiff who did not seek censor's approval had standing to mount facial attack on censorship scheme that had inadequate procedural safeguards).

*Freedman*, 380 U.S. at 58-60.[17]  Plaintiffs contend that section 12-12-10 does not contain these protections.[18]  Because section 12-12-10 does not provide for any judicial review following an employee license denial, this court need not address the promptness of administrative and judicial procedures.

Section 12-12-10 provides that an employee license shall issue unless the City Administrator finds one of several grounds of denial.  *See supra* note 8. Unlike sections 12-12-6 and 12-12-9, the sections dealing with denial, suspension, and revocation of business licenses, section 12-12-10 lacks any mechanism for review of the City Administrator's decision.  There is no provision for a public hearing before the City Council following a license denial.  *Compare* Federal

---

[17]  It is unclear whether a third procedural safeguard, requiring that the censor bear the burden of going to court to justify a license denial, must also be present in adult business licensing schemes.  The Supreme Court split sharply over the issue in *FW/PBS*.  *See* 493 U.S. at 229-30 (plurality opinion); *id.* at 239-42 (Brennan, J., concurring in the judgment); *id.* at 244-49 (White J., concurring in part and dissenting in part); *see also Ward v. County of Orange*, 217 F.3d 1350, 1355 (11th Cir. 2000) (recognizing that a majority of the Supreme Court has not recognized the distinction between adult business licensing schemes and censorship schemes); *11126 Baltimore Blvd., Inc. v. Prince George's County*, 58 F.3d 988, 996 n.12 (4th Cir. 1995) (en banc) ("The splintered opinion of the *FW/PBS* Court leaves the continued application of the third *Freedman* factor subject to some speculation.").  We do not reach the issue.

[18] Plaintiffs also contend, in a single sentence, that section 12-12-10 vests the City Council with overbroad discretion.  "Such perfunctory complaints fail to frame and develop an issue sufficient to invoke appellate review."  *Murrell v. Shalala*, 43 F.3d 1388, 1389 n.2 (10th Cir. 1994).  We will thus not consider the argument.

Heights Mun. Code ch. XII, art. XII, §§ 12-12-6, -9.[19]  In addition, there is no

authorization to appeal the City Administrator's decision to a Colorado court.

Section 12-12-10 thus fails to provide any opportunity for judicial review and is

facially invalid.[20]

## VII.  SEVERABILITY

Sections 12-12-10 and 12-12-11(B) are facially unconstitutional.  Under

Colorado law, a section of a legislative enactment is severable if the remaining

portion is autonomous and the legislature's will in passing the entire statute is not

thwarted by excision.  *See City of Lakewood v. Colfax Unlimited Assoc.*, 634 P.2d

52, 70 (Colo. 1981) (en banc).  A severability clause creates a presumption that

the legislature would have been satisfied with the remaining portions of the

enactment.  *People ex rel. Tooley v. Seven Thirty-Five East Colfax, Inc.*, 697 P.2d

348, 371 (Colo. 1985) (en banc).  If the remaining enactment, however, is so

"incomplete or riddled with omissions" that it lacks coherence, the entire

enactment should be stricken.  *Colfax Unlimited*, 634 P.2d at 70.

Sections 12-12-10 and 12-12-11(B) were made part of the municipal code

by Ordinances 97-15 and 95-11 respectively.  Both ordinances contain a

---

[19] These provisions are summarized in footnotes 6 and 7.

[20] Plaintiffs also contend that the fees charged for issuance of an employee license constitute an unconstitutional tax on free expression.  Because we conclude that the employee licensing requirement is invalid on its face, we need not decide the issue.

severability clause.[21]  Striking sections 12-12-10 and 12-12-11(B) does not render Ordinances 97-15 and 95-11 incoherent since each code amendment made by the ordinances is autonomous.  Nor will striking either section render contradictory or incoherent any other provision of the municipal code.  We therefore conclude that only section 6 of Ordinance 97-15, the provision enacting the present form of section 12-12-10, and that portion of section 5 of Ordinance 95-11 enacting the present form of section 12-12-11(B) should be stricken.

## VIII. CONCLUSION

We **affirm** the district court's exclusion of the Weaver affidavit.  We **affirm in part and reverse in part** the district court's decision with regard to the age restriction.  Section 12-12-11(B) is stricken in its entirety.  The district court's decision on the constitutionality of section 12-12-10 is **reversed**.  The section is stricken in its entirety.  The portions of the district court's opinion and order dealing with the plaintiffs' challenge to the disability provisions of sections 12-12-10 and 12-12-6,  plaintiffs' other challenges to section 12-12-6, and

---

[21] Section 8 of Ordinance 95-11 and section 10 of Ordinance 97-15 both read:

> If any article, section, paragraph, sentence, clause or phrase of this ordinance is held to be unconstitutional or invalid for any reason, such decision shall not affect the validity or constitutionality of the remaining portions of this ordinance.  The city council hereby declares that it would have passed this ordinance and each part or parts hereof irrespective of the fact that any one part or parts be declared unconstitutional or invalid.

plaintiffs' challenges to section 12-12-9 should be **vacated** on remand. The district court should then dismiss the portion of plaintiffs' complaint relating to the disability provisions and sections 12-12-6 and 12-12-9.