**In re Edward Junior GREEN, Debtor.**

**Edward Junior Green,
Appellee/Plaintiff,**

v.

**Kansas City Power & Light Co. and Kansas City Power & Light Co. d/b/a Worry Free Service, Inc., Appellants/Defendants.**

**Bankruptcy No. 00–40678–13.
Adversary No. 00–7129.
Civ.A.Nos.  01–4145–RDR, 01–4146–RDR.**

United States District Court,
D. Kansas.

July 3, 2002.

Frederick W. Schwinn, Consumer Law Center, P.A., Topeka, KS, for appellee.

Justice B. King, Fisher, Patterson, Sayler & Smith, Topeka, KS, Joseph A. Rosa, Kansas City, MO, M. Catherine Hartnett, Overland Park, KS, for appellant.

Jan M. Hamilton, Topeka, KS, trustee pro se.

## MEMORANDUM AND ORDER

ROGERS, District Judge.

These cases are before the court as appeals from an order granting debtor's motion for summary judgment and denying the creditors' motion for summary judgment in an adversary proceeding brought by the plaintiff/debtor Edward Junior Green. The creditor/ appellants are Kansas City Power & Light Company (Case No. 01–4146) and Kansas City Power & Light Company d/b/a Worry Free Service, Inc. (Case No. 01–4145). The cases have been consolidated in this court for hearing and decision. In the order being appealed, the bankruptcy court assessed a civil penalty in the amount of $5,000.00 against defendants jointly and severally pursuant to the Kansas Consumer Protection Act ("KCPA"), K.S.A. 50–623, et seq.

Summary of arguments

The appellants raise three arguments against the bankruptcy court's order. These arguments in large part revolve around the alleged failure of the bankruptcy court to find that debtor was an "aggrieved consumer" for the purposes of the KCPA. Appellants assert that the civil penalty was ordered erroneously: because this finding was not made; because debtor is not an "aggrieved consumer"; and because plaintiff has no standing to bring this action unless plaintiff is an "aggrieved consumer" or otherwise suffered an injury in fact. Appellants also contend that the debtor must prove a breach of warranty before a civil penalty may be ordered for a violation of K.S.A. 50–639(e). In response, debtor contends: first, that these issues were not properly preserved for appeal; second, that this court should assume the bankruptcy court found that debtor was an "aggrieved consumer"; third, that in fact debtor was an "aggrieved consumer"; fourth, that contrary to appellants' contention, a breach of warranty is not a condition for ordering a civil penalty under the KCPA; and fifth, the bankruptcy court's order could be affirmed on the alternative basis of unconscionable business practices, although the bankruptcy court did not make that express finding.

Facts and the KCPA

The following facts appear undisputed and are pertinent to the instant cases. Worry Free Service, Inc. ("Worry Free") is a wholly owned subsidiary of Kansas City Power & Light Company ("KCPL"). These companies work with regional heating and cooling contractors, such as A–1 Heating and Cooling ("A–1") in Topeka, Kansas, to sell, install, and maintain home heating and cooling systems.

In July 1998, the debtor, upon the advice of A–1, decided to replace his furnace, coil and condenser with a unit provided by Worry Free, under an agreement called the "Residential Worry Free Agreement." A–1 installed the unit and warranted its installation for at least one year and its service and repair of the system for at least sixty days. The unit was manufactured by Nordyne, which provided a six-year limited parts warranty to the "owner"

from the date of purchase. However, under the "Residential Worry Free Agreement" the debtor was stated to have "leased" the equipment from KCPL or Worry Free. According to the agreement, the debtor "leased" the equipment for 84 months at a rate of $92.28 per month, and could not terminate the "lease" for any reason. His payment obligation totaled $7,751.52. At the end of the "lease" term, the debtor had the option to purchase the equipment for $117.90. Given these terms and acting in accordance with previous rulings, the bankruptcy court found that the Residential Worry Free Agreement was not a lease agreement, but instead was a disguised security agreement. The bankruptcy court suggested that this could be a source of confusion for persons asked to purchase a service agreement for the Worry Free equipment. But, the record before the court does not establish that the debtor was actually misled.

KCPL and Worry Free also offered to sell debtor a service agreement through which a contractor, in this case A–1, would provide a full parts and labor warranty as well as semi-annual maintenance for the system for periods of up to 15 years at a cost of $21.95 per month plus tax. The debtor purchased such a service agreement. Thus, the debtor was protected by the Nordyne warranty, the A–1 warranty, and the service agreement warranty.

On two occasions A–1 performed maintenance or repair service for the debtor at no charge. Ultimately, the service agreement was terminated on December 27, 1999 for failure to make the required monthly payment.

Debtor filed his bankruptcy petition on April 4, 2000. In the adversary proceeding which led to this appeal, debtor asserted that the Residential Worry Free Agreement illegally disclaimed or limited implied warranties of merchantability and fitness

for a particular purpose as well as remedies for the breach of such warranties in violation of the KCPA.

The KCPA contains at least two sections which make reference to the disclaimer of such warranties. K.S.A. 50–627(b)(7) provides that the exclusion, modification or limitation of such warranties is a circumstance to consider in determining whether a supplier has engaged in an unconscionable act or practice in connection with a consumer transaction. K.S.A. 50–639(a) provides that no supplier shall exclude, modify or attempt to limit implied warranties of merchantability and fitness for a particular purpose.

It is uncontested that appellants are "suppliers" of equipment for purposes of the KCPA; that debtor is a consumer; and that the transaction was a consumer transaction under the KCPA.

The appellants have not denied that the Residential Worry Free Agreement contained disclaimers of the implied warranties of merchantability and fitness for a particular purpose. Before the bankruptcy court, appellants argued that the debtor was notified that these disclaimers were void in Kansas by general language in the agreement stating that "The Agreement shall be governed by the laws of the state where the Premises are located" and "If any provision of the Agreement is invalid, such provision shall be deemed omitted, but the remaining provisions of the Agreement shall be given full force and effect." The bankruptcy court found, however, that these statements did not adequately alert the debtor that the warranty disclaimers might be ineffective in Kansas. This holding is not contested on appeal.

As mentioned, there are two parts of the KCPA which address the disclaimer of implied warranties of merchantability and fitness for a particular purpose. Before the

bankruptcy court, debtor relied upon K.S.A. 50–627(b) and asked the bankruptcy court to find that appellants engaged in unconscionable practices. However, the bankruptcy court chose to rely upon K.S.A. 50–639(a) and ordered the civil penalty on the basis of a violation of that portion of the KCPA. The court stated it was unnecessary to determine if there was an unconscionable act or practice.

Nevertheless, the bankruptcy court was compelled to comment regarding the "extreme adhesion nature" of the Residential Worry Free Agreement and disclosure statement.

Besides illegally disclaiming the warranties of merchantability and fitness for a particular purpose, the agreements were otherwise worded and structured to take advantage of unsophisticated consumers. Even though legally, the transaction was clearly a sale of the Worry Free Equipment, the Sale Agreement called it a lease, increasing the odds that a consumer, not knowing he or she was actually the owner of the Equipment and protected by warranties, would purchase a Service Agreement rather than rely on warranty protection like Nordyne's that is provided only to the "owner." This facet of the Sale Agreement is reinforced by the "Maintenance" paragraph in the Disclosure, which declares that the consumer is responsible for all maintenance and service on the Equipment, but can satisfy this obligation by entering into a separate agreement like the Service Agreement. The Sale Agreement declared that the consumer must make all the payments due under the agreement even if the Worry Free equipment was defective, damaged or destroyed, and could not avoid any payment obligation for any reason. It appears, for example, to mean the consumer must pay even if defective Equipment blew up and destroyed the consumer's home. Some-

how, the consumer was required to make the payments even if the Agreement was unenforceable; the Court has difficulty imagining how the Suppliers planned to enforce this provision. Instead of being relieved of payment obligations if it turned out the Worry Free Equipment was defective or unsatisfactory for any other reason, the consumer was also said to agree to indemnify the Suppliers and their contractors for any liability and expenses that might arise out of or related to the Equipment, apparently even if the liability and expenses were caused by defects in the Equipment. In addition to disclaiming the implied warranty of merchantability that the Equipment would be fit for the ordinary purposes for which it was designed— in this case, heating and cooling the consumer's home—the Suppliers even refused to warrant that the consumer would receive good title to the Equipment once he or she finished paying for it. Given these one-sided, over-reaching provisions, the Court finds it difficult to maintain any hope that the Suppliers had any true desire to alert their customers that the warranty disclaimers might be invalid under Kansas law.

The "aggrieved consumer" requirement is taken from K.S.A. 50–634(b) which states: "A consumer who is aggrieved by a violation of this act may recover ... damages or a civil penalty as provided in subsection (a) of K.S.A. 50–636 and amendments thereto, whichever is greater." K.S.A. 50–636(a) provided at the time of the violations alleged in these cases: "The commission of any act or practice declared to be a violation of this act shall render the violator liable to the aggrieved consumer ... for the payment of a civil penalty, recoverable in an individual action ... in a sum set by the court of not more than $5,000 for each violation." The maximum penalty has since been amended to $10,000 for each violation.

■ As interpreted by the Kansas Supreme Court in *Finstad v. Washburn University*, 252 Kan. 465, 845 P.2d 685, 690–91 (1993), an "aggrieved consumer" is one who has suffered a loss or injury because of a violation of the KCPA. In Finstad, summary judgment was granted against a KCPA claim because there was no proof that the plaintiffs relied upon a false statement of accreditation which violated the KCPA when they enrolled in a university program.

*Preservation of the "aggrieved consumer" issue on appeal*

■ The appellants contend that the bankruptcy court's order is in error because the debtor is not an "aggrieved consumer" who may recover a civil penalty under the KCPA. The debtor has responded that this issue was not preserved for appeal. A general statement of the principles controlling the consideration of issues on appeal which were not preserved in the lower court is contained in *Trierweiler v. Croxton & Trench Holding Corp.*, 90 F.3d 1523, 1538 (10th Cir.1996):

> Generally, issues not argued before the district court will not be considered on appeal. *Singleton v. Wulff*, 428 U.S. 106, 120, 96 S.Ct. 2868, 2877, 49 L.Ed.2d 826 (1976); *Lyons v. Jefferson Bank & Trust*, 994 F.2d 716, 720 (10th Cir.1993). However, in some circumstances, resolution of issues not raised below is justified. *Singleton*, 428 U.S. at 121, 96 S.Ct. at 2877–78. "The matter of what questions may be taken up and resolved for the first time on appeal is one left primarily to the discretion of the courts of appeals, to be exercised on the facts of individual cases." *Id.*

■ In the instant case, although the debtor's status as an "aggrieved consumer" was not explicitly raised as an issue below, the court believes it is proper to consider the question on appeal, for the following reasons. First, the essence of the debtor's status as an "aggrieved consumer," that is, whether debtor suffered a loss or injury, was discussed, if not emphasized, in the briefs before the bankruptcy court. The appellants asserted in their list of undisputed facts that debtor had not suffered an injury or loss. The debtor acknowledged this "no harm no foul" argument on pages 3 and 4 of his brief in response to the appellants' motion for summary judgment. Second, given the holding in Finstad, the question of whether debtor is an "aggrieved consumer" is elemental to the issue of whether the debtor may recover a civil penalty. Appellate courts are more likely to consider legal issues which were not raised in the lower court, than factual issues, particularly when their proper resolution is certain. See *Ross v. United States Marshal*, 168 F.3d 1190, 1195 n. 5 (10th Cir.1999); see also, *Proctor & Gamble v. Haugen*, 222 F.3d 1262, 1271 (10th Cir.2000) (considering an issue of statutory interpretation not raised before the district court on summary judgment). Finally, the question of injury or loss is also fundamental to the question of standing, which is an issue that can be raised for the first time on appeal. See *Essence, Inc. v. City of Federal Heights*, 285 F.3d 1272, 1280 (10th Cir. 2002) (appellate court raises standing sua sponte); *Skrzypczak v. Kauger*, 92 F.3d 1050, 1052 (10th Cir.1996) cert. denied, 519 U.S. 1115, 117 S.Ct. 957, 136 L.Ed.2d 844 (1997) (same).

*Was debtor an "aggrieved consumer?"*

■ Debtor asserts that the court should assume the bankruptcy court found that debtor was an "aggrieved consumer" even though no such express finding was made. Debtor contends that it is not necessary in an order granting summary

judgment for the court to make findings of fact (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986)) and that an appellate court may assume that a lower court considered all the necessary elements to its decision.

■ We reject this analysis as applied to the case at bar. While it is not necessary to make fact findings in an order resolving a summary judgment motion, in this instance an order for a civil penalty under the KCPA could not be issued unless there was no genuine issue of material fact as to the debtor's loss or injury due to the violation of the KCPA. See *Finstad*, 845 P.2d at 691 (finding that an "aggrieved consumer" must suffer a loss or injury resulting from a violation of the KCPA). Appellants alleged in their list of undisputed facts that, in effect, there was no loss or injury and the bankruptcy court did not expressly accept or reject these alleged facts. If the record supported the absence of a material issue disputing loss or injury, in other words, if the debtor's loss or injury was plain, then the court might be willing to assume the lower court considered the issue. That is not the situation here. Therefore, the court shall not assume that the bankruptcy court found that debtor suffered a loss or injury which would make debtor an "aggrieved consumer" under the KCPA.

Debtor also contends that he did suffer an injury or loss because he would not have purchased the service agreement *if* he had known that appellants could not disclaim the implied warranties of merchantability and fitness for a particular purpose. In support of this contention debtor cites the comments the bankruptcy court made "[i]n passing" to the effect that the language of the Residential Worry Free Agreement increased "the odds" that a consumer would purchase a service agreement not knowing he was the actual owner of the equipment and protected by warranties. This is a factual issue which is not proper for this court to decide on appeal upon the record before us. The cited language in the bankruptcy court's order does not state that the debtor was misled in this case; it merely speaks of odds and possibilities. Therefore, it does not constitute a finding that debtor suffered an injury or loss.

In summary, upon the record before the court, an issue of fact remains regarding whether debtor suffered a loss or injury which would make him an "aggrieved consumer" under the KCPA. The court cannot decide this question on appeal. Therefore, the court shall remand the case to the bankruptcy court for further proceedings.

Remaining arguments

■ Before ending this opinion the court shall address two other issues raised by the parties. First, the court agrees with the debtor that a civil penalty may be ordered under the KCPA without finding a breach of warranty under K.S.A. 50–639(e). The appellants have argued that the bankruptcy court's order is in error because a civil penalty was issued under K.S.A. 50–639(e) without finding a breach of warranty. This misreads the bankruptcy court's order in our opinion. The order only cites K.S.A. 50–639(e) once, and that is for the statement that disclaimers of implied warranties of merchantability and fitness for a particular purpose in violation of K.S.A. 50–639 are void. The civil penalty was based upon a violation of K.S.A. 50–639(a) and the remedy provisions of K.S.A. 50–634(b) and 50–636(a).

Finally, the court rejects the argument that the bankruptcy court's order could be affirmed upon the alternative grounds that appellants committed an unconscionable act in violation of K.S.A. 50–627. Even if appellants did violate K.S.A. 50–627, the

debtor would have to prove loss or injury to obtain a civil penalty as an "aggrieved consumer." Therefore, K.S.A. 50–627 does not provide a sufficient basis alone to affirm the order of a civil penalty in this case.

Conclusion

For the above-stated reasons, the bankruptcy court's order is reversed and the cases are remanded for further proceedings consistent with this opinion. The Clerk is directed to transmit a copy of this order to the Clerk of the Bankruptcy Court.

**IT IS SO ORDERED.** ·